**Dwight YARBER, Plaintiff,**

v.

**INDIANA STATE PRISON, Defendant.**

**No. S86–166.**

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 4, 1988.

J. Christopher Warter, South Bend, Ind., for plaintiff.

Robert B. Wente, Deputy Atty. Gen., Indianapolis, Ind., for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on the following matters: (1) the defendant's motion to strike the plaintiff's jury demand; (2) the defendant's motion for summary judgment; and (3) the court's order that the plaintiff show cause why this case should not be dismissed pursuant to Rule 41(b), Fed.R.Civ.P. For the reasons set forth below, the court now vacates its order to show cause, grants the defendant's motion to strike the plaintiff's jury demand, and grants in part the defendant's motion for summary judgment.

### I. Facts

#### A. *The Allegations of the Amended Complaint*

The plaintiff, Dwight Yarber, was employed as a security guard by the defendant, Indiana State Prison ("the Prison"), from April, 1976 until February 5, 1986. In his complaint filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, he alleges

... that he was required to work in a place and under conditions where bias and prejudice against members of his race existed on the part of his co-workers and his superiors; that, because of this discriminatory atmosphere, he was harassed and treated poorly on the job; and that he was denied on several occasions to be appointed and promoted for which he was eligible and had applied. Plaintiff was further discriminated against because of his race and because he had previously filed a complaint against the defendant, Indiana State Prison, with the Equal Employment Opportunity Commission, he was retaliated and ultimately forced to quit his job.

Amended Complaint, ¶ 1. Mr. Yarber's complaint further specifies allegations of discrimination that were the subject of three separate charges of discrimination filed with the Equal Employment Opportunity Commission ("EEOC") between 1978 and 1985.

In 1978, Mr. Yarber filed a claim of racial discrimination against the Prison on the

grounds that name-calling by a white Prison employee, Captain Edward Kurzhall, constituted retaliation for his filing of previous complaints before the Indiana Civil Rights Commission and that the Prison condoned a racially biased work environment. On November 29, 1979, the Indiana Civil Rights Commission found probable cause to believe that the Prison had discriminated against Mr. Yarber; however, Mr. Yarber did not pursue his remedies in a court of law at that time because his attorney failed to file a proper complaint.[1]

On July 26, 1984, Mr. Yarber filed a second charge of discrimination with the EEOC alleging in pertinent part:

> It is my opinion that I am being set-up for termination and subjected to discriminatory treatment due to my race because:
>
> 1. Even though I have a good work record and have performed my job satisfactorily in the past, my white supervisors are constantly creating barriers to employment;
>
> 2. On July 17, 1984, I was notified that I had been written up on June 25, 1984 on charges of "befriending and giving information and warnings to black inmates" to keep them out of trouble ...;
>
> 3. The report was erroneous and a pre-tex [sic], yet I must appear before the P and T board to prove my innocence before a group which has already decided my guilt;
>
> 4. Blacks are routinely brought before the P and T board and dealt with in a more negative manner than whites; records and statistics will show a disproportionate number of blacks have been brought before the P and T board and fires, whereas white officers are treated with lenience and seldom called before the board for similar charges. It is my opinion that Indiana State Prison hires black officers to satisfy government goals for Affirmative Action and in turn gets rid of them as quickly and as often as possible.

On July 2, 1985, Mr. Yarber filed a third charge of racial discrimination against the Prison, alleging:

> It is my opinion that I have been subjected to unfair and discriminatory treatment by the facility due to my race (black) and as a possible retaliatory action because:
>
> 1. On June 25, 1985, I was involved in an incident in the facility cafeteria which resulted in my being written up negatively by Tony Checola, ODR [Officers Dining Room] supervisor, in a report to my supervisor ...;
>
> 2. The accusations made were untrue and the situation is typical of the type of trouble I encounter constantly while trying to perform my duties at ISP since I originally filed racial discrimination charges on July 26, 1984....;
>
> 3. ... as a result of this incident on 6/25/85, I wrote up the inmate involved. The appropriate action was not taken with the inmate. He should have been placed in a certain location until an investigation was done;
>
> 4. The actions taken by my supervisor at ISP were I am concerned underminds [sic] and denigrates my authority and working relationships with the inmates and co-workers.

Concerning the July 26, 1984 and July 2, 1985 charges of discrimination, the EEOC issued right to sue letters to Mr. Yarber on January 7 and 15, 1986, respectively.

Mr. Yarber further alleges that from July 2, 1985 through February 5, 1986, the Prison "single[d] [him] out" for "harassment [which] was motivated by racial discrimination and retaliation for having filed [previous] complaints" and that such retaliation included his transfer to an undesirable work time without his consent, with no just cause, and in direct violation of his doctor's orders which had been communicated to the Prison. As a result, Mr. Yarber alleges that he was forced to terminate his employment to avoid personal injury.

---

1. Mr. Yarber is now represented by different counsel.

### B. *Circumstances Surrounding the Order to Show Cause*

On April 20, 1987, the court scheduled this cause for trial on September 2, 1987. The court further ordered Mr. Yarber's counsel to prepare and submit the proposed pretrial order by August 19, 1987.

As of August 21, 1987, when the court conducted a telephonic status conference in this cause, Mr. Yarber's counsel had not submitted the proposed pretrial order. During that status conference, the court and counsel discussed plaintiff's counsel's failure to meet the required deadlines. The court vacated the September 2, 1987 trial setting and ordered counsel for Mr. Yarber to submit the proposed pretrial order by August 26, 1987. On August 24, 1987, the court issued a written order reiterating the deadlines announced at the August 21 telephonic conference.

As of August 28, 1987, no proposed pretrial order had been filed; accordingly, the court issued an order that the plaintiff show cause why the case should not be dismissed pursuant to Rule 41(b), Fed.R. Civ.P. On September 3, 1987, Mr. Yarber's attorney submitted the proposed pretrial order and a memorandum to show cause. The memorandum offered the following excuse for counsel's failure to comply with the deadlines established at the August 21 telephonic conference:

That it is undersigned's memory that during the conference of June [sic] 21, 1987, no mention was made of filing a pretrial order by August 26, 1987, however, should this memory be faulty and the order of the court of August 25, 1987 be correct, the undersigned would respectfully show the court that this order was not received until August 27, 1987 at which time the plaintiff was already late on August 26 filing, and has attempted to comply with the order as rapidly and properly as is humanly possible.

Memorandum to Show Cause, ¶ 5.

## II. Discussion

### A. *Order to Show Cause*

■ Although not impressed with the reasons set forth in counsel's memorandum, the court declines to dismiss the case pursuant to Rule 41(b). In this circumstance, the court declines to deprive Mr. Yarber of his opportunity to present his claim on the merits due to his attorney's failure to comply with the scheduling deadlines established by the court. In so ruling, the court presumes that the future of this case will see no similar problems, for such problems would be sanctioned as warranted under Federal Rules of Civil Procedure 11 and 41(b), regardless of any resulting impact on the plaintiff's case.

### B. *Motion to Strike*

■ Mr. Yarber is not entitled to a trial of this cause before a jury because the Eleventh Amendment bars claims for damages against the Indiana State Prison under 42 U.S.C. § 1981. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Foulks v. Ohio Department of Rehabilitation and Correction,* 713 F.2d 1229, 1232–1233 (6th Cir.1983). Mr. Yarber concedes this point in his memorandum in opposition to the defendant's motion for summary judgment. Accordingly, the court now grants the defendant's motion to strike the plaintiff's jury demand.

### C. *Motion for Summary Judgment*

#### 1. *Summary Judgment Standard*

In a summary judgment motion, the movant must first demonstrate, by way of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, that (1) no genuine issues of material fact exist for trial, and (2) the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Munson v. Friske,* 754 F.2d 683 (7th Cir.1985). If the motion's opponent would bear the burden of proof at trial on the matter that forms the basis of the summary judgment motion, the burden of proof shifts to the motion's opponent if the movant makes its initial showing, and the motion's opponent must come forth and produce affidavits, depositions, or other admissible documentation to show what facts

are actually in dispute. *Celotex,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Valentine v. Joliet Township High Sch. Dist. No. 204,* 802 F.2d 981 (7th Cir.1986); *Klein v. Trustees of Indiana University,* 766 F.2d 275, 283 (7th Cir.1985). Summary judgment should be granted only if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260 (7th Cir.1986).

When the parties do not dispute the factual basis of a motion for summary judgment, the reviewing court's only inquiry is whether judgment should issue as a matter of law. The burden of proof on this matter rests with the moving party. Summary judgment is inappropriate, however, if the parties disagree about inferences reasonably to be drawn from undisputed facts. *Bowyer v. United States Dept. of Air Force,* 804 F.2d 428 (7th Cir.1986).

### 2. *Analysis*

#### a. *Scope of the EEOC Charge*

The Prison argues that Mr. Yarber includes in his complaint allegations of discriminatory action that occurred subsequent to the filing of his 1984 and 1985 EEOC complaints and that are not within the scope of those complaints. Specifically, the Prison maintains that Mr. Yarber's claims of (1) a racially discriminatory work environment maintained by the defendant, (2) racial harassment, (3) denial of job promotions for which he was eligible and had applied, and (4) a retaliatory work reassignment cannot be raised in this case because they are outside the scope of the complaints filed before the EEOC in 1984 and 1985. In response, Mr. Yarber argues that these additional charges are properly before the court because they are reasonably related to the allegations of the prior EEOC complaints.

■ In a Title VII case, the scope of the complaint is limited to the allegations included in a charge properly filed before the EEOC and the scope of the resulting EEOC investigation that would "reasonably be expected to grow out of the charge". *Jen-*

*kins v. Blue Cross Mut. Hospital Ins., Inc.,* 538 F.2d 164, 167 (7th Cir.), *cert. denied* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir.1970); A. Larson and L. Larson, *Employment Discrimination* § 49.11(c)(1), at 9B–9; *see Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 570 (9th Cir.1973) ("judicial complaint may encompass any discrimination like or reasonably related to the allegations of the EEOC charge ..."). As applied to Mr. Yarber's complaint, this analysis requires that certain of his claims be foreclosed but that certain others be preserved.

Mr. Yarber alleges four separate claims of discrimination that are not specifically mentioned in his 1984 and 1985 EEOC complaints:

> (1) the maintenance of a racially discriminatory work environment;

> (2) racially motivated harassment directed at Mr. Yarber;

> (3) denial of job promotions for which he was eligible and had applied; and

> (4) retaliation in the form of an undesirable transfer.

Each of these claims must be analyzed separately.

■ Mr. Yarber's claim concerning the maintenance of a racially discriminatory work environment is reasonably related to his 1984 EEOC charge that the Prison hires black employees to meet state hiring goals but then attempts to "get rid" of those hired as quickly and as often as possible. EEOC investigation of such allegations logically would extend to an inquiry concerning whether the work environment was racially discriminatory.

■ Mr. Yarber's claim concerning racially motivated harassment and poor treatment is reasonably related to both his 1984 and 1985 EEOC charges concerning racially motivated disciplinary measures. Because both charges include language to indicate that these alleged incidents were intentionally directed at him and were not

isolated instances,[2] the ensuing EEOC investigation logically would probe other racially motivated harassment directed at Mr. Yarber.

■ Mr. Yarber's allegation of a retaliatory transfer in work assignments is reasonably related to both his 1984 and 1985 EEOC charges. *See Grimes v. Louisville & Nashville Railroad Company,* 583 F.Supp. 642, 649 (S.D.Ind.1984), *aff'd* 767 F.2d 925 (7th Cir.1985), *cert. denied* 476 U.S. 1160, 106 S.Ct. 2280, 90 L.Ed.2d 722 (1986) (claim of retaliatory discharge subsequent to EEOC charge could be considered without filing of separate charge of retaliation); *accord Gupta v. East Texas State University,* 654 F.2d 411, 414 (5th Cir. 1981).

■ Mr. Yarber's claim concerning denial of his promotion is not reasonably related to his charges before the EEOC. In investigating the claims specifically included in his 1984 and 1985 charges, the EEOC's investigation would not have included the factual issues relevant to an allegedly discriminatory denial of promotion. An alleged discriminatory denial of promotion would require an investigation into the positions involved, the applicant pool and the qualifications and race of other employees considered; these matters would not have been implicated by the 1984 and 1985 EEOC charges.

#### b. *Section 1981 Claim for Damages*

For the reasons stated in the discussion concerning the defendant's motion to strike, *see supra* at 6, the Prison's summary judgment motion on Mr. Yarber's "Second Claim for Relief", which requests damages under 42 U.S.C. § 1981, should be granted.

#### c. *Merits of the Title VII Claim*

The Prison advances several arguments in support of its summary judgment motion. First, the Prison argues that the facts alleged in the complaint cannot support proof of a Title VII violation under a "disparate impact" theory. Second, the Prison argues that the complaint's conclusory allegations of discrimination are insufficient to state a claim under a "disparate treatment" theory of intentional discrimination. Finally, the Prison argues that the statistical evidence presented to the EEOC is insufficient to prove a violation of Title VII under a disparate treatment theory. Mr. Yarber's response to the motion for summary judgment does not address these arguments.

■ It is sufficient to note that the Prison has failed to meet its initial burden under *Celotex* of establishing that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Munson v. Friske,* 754 F.2d 683 (7th Cir.1985). Since the filing of the summary judgment motion, the Supreme Court has held that a plaintiff in a Title VII action may challenge subjective employment decisions under a disparate impact theory. *Watson v. Fort Worth Bank and Trust,* — U.S. —, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). This decision allows Mr. Yarber to use statistics to support his claims concerning the employee disciplinary procedures used at the Prison.

The complaint's allegations are sufficient to withstand a motion to dismiss and require that the defendant come forward with a greater showing at this stage. The remainder of the Prison's arguments are more appropriately considered at the trial of this cause to the court. Accordingly, the motion for summary judgment should be denied to the extent that it goes to the merits of Mr. Yarber's Title VII claim.

### III. Conclusion

For the foregoing reasons, the defendant's motion for summary judgment must be GRANTED IN PART, in accord with the following terms:

---

**2.** The 1984 charge intimates that the disciplinary measures are part of a racially motivated "set-up" for termination and are a result of "white supervisors ... constantly creating barriers to [Mr. Yarber's employment]"; the 1985 charge includes the statement that "the situation [described] is typical of the type of trouble I encounter constantly while trying to perform my duties". *See supra* at 273.

1. The defendant's motion is granted with regard to the plaintiff's claim of denial of job promotions for which he was eligible and had applied.

2. The motion is denied in all other respects.

The court further GRANTS the defendant's motion to strike the plaintiff's jury demand and VACATES the order to show cause.

SO ORDERED.