John GOMEZ, Plaintiff,

v.

AMOCO OIL COMPANY, Defendant.

No. H90–248.

United States District Court,
N.D. Indiana,
Hammond Division.

May 6, 1991.

Ruben Castillo, Chicago, Ill., for plaintiff.

Michael Weinbaum, Michael A. Warner, Chicago, Ill., and James E. McHie, Hammond, Ind., for defendant.

## MEMORANDUM OPINION
## AND ORDER

LOZANO, District Judge.

This matter is before the court on the Motion for Summary Judgment, filed March 18, 1991, by the defendant, Amoco Oil Company (hereinafter referred to as "Amoco"). For the reasons set forth herein, the Motion for Summary Judgment is hereby DENIED.

### Background

The plaintiff, John Gomez (hereinafter referred to as "Gomez"), a Mexican–American, has been employed by the defendant, Amoco, at its refinery in Whiting, Indiana, since August 1970. On May 12, 1986, Gomez filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Amoco had discriminated against him on the basis of national origin. On August 19, 1987, Gomez amended his original charge to change "Mexican" to "Hispanic", to add that the discrimination was "continuing", and to allege that Amoco discriminates against Hispanics as a class. Gomez amended his original charge a third time on April 12, 1988, to add fifteen (15) "particulars" concerning incidents in 1984 and 1985.

The EEOC conducted an investigation of Gomez's claims, and, on December 18, 1989, found reasonable cause to believe that Gomez had been subjected to discriminatory discipline and harassment. The EEOC also invited the parties to engage in conciliation and sent them a draft Conciliation Agreement. On February 2, 1990, the EEOC sent Amoco a revised Conciliation Agreement which would have afforded Gomez monetary and injunctive relief from the allegedly discriminatory discipline, harassment, and retaliation he suffered. Amoco agreed to and executed this revised Conciliation Agreement on February 27, 1990, but Gomez refused to accept this agreement because it does not provide relief for discriminatory denials of promotions.

On March 13, 1990, the EEOC informed Gomez's attorney that "[p]romotion was not an issue of Mr. Gomez's charge[,]" and that "[t]he Conciliation Agreement that we forwarded to you on February 28, 1990, which stemmed from the allegations of his charge provided full relief to Mr. Gomez." When Gomez persisted in his refusal to accept the Conciliation Agreement, the EEOC recommended that his charge be dismissed for "failure to accept full relief". On March 29, 1990, the EEOC issued to Gomez a Notice of Right to Sue, by which the EEOC stated that his charge had been dismissed because Amoco had "made a written settlement offer which affords full relief from the harm [Gomez] alleged."

On August 10, 1990, Gomez filed his Complaint under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and the Indiana Civil Rights Act, Ind.Code § 22-9-1, *et seq.* By this Complaint, Gomez seeks damages and declaratory and injunctive relief for what he alleges to be discrimination in the terms and conditions of employment which deny promotional advancement opportunities because of national origin, and which results in a hostile working environment, and disparate disciplinary measures on the basis of national origin. Amoco denies these allegations, and has moved for summary judgment against Gomez.

### Discussion

Amoco contends that Gomez's claims for relief based on Amoco's allegedly discriminatory practice of denying Hispanics promotional and training opportunities must be dismissed for several reasons. First, Amoco contends that these claims are not "like or reasonably related to" the allegations in his original EEOC charge, even considering both his amendments to that charge. Second, Amoco contends that Gomez's promotional claims are time-barred because he failed to identify any discriminatory denial of promotion within 300 days of his EEOC charge. Amoco also contends that Gomez's promotional claims fail as a matter of law because he rejected an offer of full relief. On these grounds, Amoco has moved for summary judgment.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated

"that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988); *Beard v. Whitley County R.E. M.C.*, 840 F.2d 405, 409 (7th Cir.1988); *Roman v. United States Postal Serv.*, 821 F.2d 382, 385 (7th Cir.1987); *McGraw–Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1167 (7th Cir.1986); *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir.1986). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts which might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter*, 840 F.2d at 434 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 211 (1986)).

The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Donald v. Polk County*, 836 F.2d 376 (7th Cir.1988); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970); *Backes v. Valspar Corp.*, 783 F.2d 77, 79 (7th Cir.1986). To preclude summary judgment, a non-moving party must show a material issue of fact. "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard*, 840 F.2d at 410. Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate. Under such circumstances, "there can be no 'genuine issue as to any material fact', since a complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986). *See also Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511, 91 L.Ed.2d at 212.

Amoco contends that since the word "promotion" was not included in the charge which Gomez signed on May 12, 1986, or in either of his amendments to his charge, the EEOC did not view his charge to include wrongful denial of promotions, and did not investigate these allegations. Amoco also contends that, as a result of Gomez's failure to include wrongful denial of promotions in his charge or subsequent amendments, Amoco was denied an opportunity to participate in conciliation regarding this allegation. Therefore, Amoco contends, Gomez's promotional claim is barred by the "scope of the charge" rule.

Gomez contends that there is a genuine issue of material fact regarding whether the denial of promotions was part of his original charge, and that this issue precludes summary judgment. To support this assertion, Gomez notes that the intake cover sheet completed by Mary Hagler of the Indiana Human Rights Commission on May 16, 1986, states that Gomez sought relief for "[l]oss of pay, loss of promotional advances, record cleared, cease all harassment[.]" (See Exhibit 7, Plaintiff's Appendix of Materials in Support of His Answer to Defendant's Motion for Summary Judgment, filed April 2, 1991 (hereinafter referred to as "Plaintiff's Exhibit [number]").) Additionally, during the course of the EEOC investigation, Gomez submitted an "EEOC Affidavit" in which he specifically listed incidents which he alleged demonstrated that he had been denied promotional opportunities due to his national origin. (See Plaintiff's Exhibit 12.)

Gomez also contends that EEOC Investigator Phyllis Jackson, who conducted the investigation of his charges prior to Investigator Vance, had informed him that loss of promotional opportunities was discussed as part of the investigation. (See Plaintiff's Exhibit 10, p. 4, paragraph 16; and Deposition of John Gomez, February 22, 1991, Defendant's Appendix of Materials in Support of Its Motion for Summary Judgment, filed March 18, 1991 (hereinafter referred to as "Defendant's Appendix"), Tab 1, p. 133.) Additionally, Gomez contends that Investigator Vance informed him that

when the class action component of his charge was investigated, promotions would be the main topic. (See Plaintiff's Exhibit 10, p. 5, paragraph 17.)

"In a Title VII case, the scope of the complaint is limited to the allegations included in a charge properly filed before the EEOC and the scope of the resulting EEOC investigation that would 'reasonably be expected to grow out of the charge.'" *Yarber v. Indiana State Prison*, 713 F.Supp. 271, 275 (N.D.Ind.1988) (citing *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Oubichon v. North Am. Rockwell Corp.*, 482 F.2d 569, 570 (9th Cir.1973); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970); A. Larson and L. Larson, *Employment Discrimination* § 49.11(c)(1), at 9B–9). "Section 2000e–5(b) provides, in relevant part, that '[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.'" *Philbin v. Gen. Elec. Capital Auto Lease, Inc.*, 929 F.2d 321, 323 (7th Cir.1991) (*per curiam*) (quoting 42 U.S.C. § 2000e–5(b)). Additionally, "[a] charge may be amended to cure technical defects ·or omissions," and "[s]uch amendments ... will relate back to the date the charge was first received." *Philbin*, 929 F.2d at 323 (quoting 29 C.F.R. § 1601.12(b)).

The United States Court of Appeals for the Seventh Circuit has held that "an intake questionnaire which is later verified may be sufficient to constitute a charge in some circumstances." *Philbin*, 929 F.2d at 323. This holding was based on the principle that "Title VII is remedial legislation which must be construed liberally[,]" such that technical interpretations of procedural provisions which would defeat its remedial purpose are to be avoided. *Id.* (citing *Peterson v. City of Wichita*, 888 F.2d 1307, 1309 (10th Cir.1989); *Casavantes v. California State Univ.*, 732 F.2d 1441, 1442 (9th Cir.1984); *Price v. Southwestern Bell Tel. Co.*, 687 F.2d 74, 77–78 n. 3 (5th Cir. 1982); *Waiters v. Robert Bosch Corp.*, 683 F.2d 89, 92 (4th Cir.1982)).

The court of appeals did not, however, rule that all intake questionnaires could be considered charges, for such a ruling would render the EEOC's distinction between intake questionnaires and charges "meaningless", and would "defeat the purpose of a charge as providing notice and initiating the EEOC's investigation of the complaint." *Id.* (construing *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 542 (7th Cir.1988)). Only when the "information contained in the intake questionnaire [is] sufficient to constitute a charge, and ... the plaintiff made it clear that he intended to activate the Act's machinery with the filing of the intake questionnaire[ ]" will an intake questionnaire constitute a "charge" within the meaning of 42 U.S.C. § 2000e–5(b). *Philbin*, 929 F.2d at 324–25 (construing *Steffen*, 859 F.2d at 544).

In the instant case, there is an issue of fact as to whether the information supplied by Gomez was sufficient to put the EEOC on notice that he wished to "activate the machinery" of the Civil Rights Act with respect to the investigation of his claim of denial of promotional opportunities based on national origin. While the intake cover sheet, which was not filled out by Gomez, and Gomez's EEOC Affidavit, executed August 19, 1987, contains sufficient information to constitute a charge within the meaning of 42 U.S.C. § 2000e–5(b), the typewritten charges reviewed and signed by Gomez do not contain this information. (See Plaintiff's Exhibit 7; Plaintiff's Deposition Exhibits 1 and 19, in Defendant's Appendix of Materials in Support of Its Motion for Summary Judgment filed March 18, 1991 (hereinafter referred to as "Defendant's Appendix"), Tabs 2 and 5).

Amoco contends that Gomez "cannot dispute that the EEOC did not actually investigate a promotion charge[,]", see Defendant's Brief filed March 18, 1991, p. 13, and that EEOC Investigator Edward Vance made it very clear to Gomez throughout the course of the investigation that denial of promotions was not an issue and was not part of the investigation. (See Weinbaum Affidavit Exhibit G, Defendant's Appendix, Tab 8(G).) Having reviewed the documents submitted by both parties in support of and

in opposition to the motion for summary judgment, this court concludes that loss of promotional opportunities may have been discussed, but it was not formally investigated. As Judge Miller held in *Yarber*, a

claim concerning denial of ... promotion is not reasonably related to ... charges [of racially motivated disciplinary matters and racially discriminatory work environment] before the EEOC. In investigating the claims specifically included in ... [these] charges, the EEOC would not have included the factual issues relevant to an allegedly discriminatory denial of promotion. An allegedly discriminatory denial of promotion would require an investigation into the positions involved, the applicant pool and the qualifications and race of other employees considered; these matters would not have been implicated by the ... charges [of racially motivated disciplinary matters and racially discriminatory work environment].

713 F.Supp. at 276. The materials submitted by the parties do not contain requests for this type of information. Therefore, this court must conclude that the investigation did not encompass this claim.

Amoco contends that since Gomez was represented by counsel throughout the EEOC investigation, and had extensive experience with civil rights law, his failure to amend his charges to specifically claim loss of promotional opportunities is inexcusable and must result in the dismissal of these charges from his complaint in this action. "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir.1985), *as quoted in Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989). While this requirement does not restrict the subject matter jurisdiction of the court, but rather serves as a condition precedent which must be performed before filing suit in federal court, "the only claims of discrimination which are cognizable are those that are 'those that are like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Schnellbaecher*, 887 F.2d at 127 (quoting *Babrocky*, 773 F.2d at 864; *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.1976) (*en banc*), *cert. denied* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976)).

"However, a limited EEOC investigation will not necessarily defeat a complaint where the complaint contains allegations like or reasonably related to the EEOC charge, but which the EEOC failed to investigate." *Schnellbaecher*, 887 F.2d at 127. "In such a case, 'the proper inquiry would be into what EEOC investigation could reasonably be expected to grow from the original complaint.'" *Id.* (quoting *Babrocky*, 773 F.2d at 864 n. 2). *Accord Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3rd Cir.1978); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3rd Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977); *Gamble v. Birmingham S.R.R.*, 514 F.2d 678, 688–89 (5th Cir.1975). Therefore, while "the investigation may help define the scope of the charge, it is primarily the charge to which [the court must look to determine] whether the scope requirement is satisfied." *Schnellbaecher*, 887 F.2d at 127 (citation omitted).

In this case, the typewritten charges, including the amendments, do not contain language which specifically identifies loss of promotional opportunities as an issue for investigation, but other documents prepared by the EEOC or given to the EEOC by Gomez during the investigation do. Additionally, deposition testimony given by three Amoco employees illustrates the importance of this issue. Eric Weck, Gomez's supervisor, stated that while he was not certain, he believed that one person had the responsibility and authority to place employees in the chief operator training school. (See Deposition of Eric Weck at p. 18, Plaintiff's Exhibit 1.) Weck also stated that the supervisory position offered no difference in pay, and that he became a supervisor when a superintendent told him

he would. (See Deposition of Eric Weck at p. 40, Plaintiff's Exhibit 1.)

A foreman, Vyt Lausauzkas, stated that the decision to give an employee training to become a foreman was made by the scheduler and superintendent. (See Deposition of Vyt Lausauzkas at p. 20, Plaintiff's Exhibit 2.) Lausauzkas also stated that a "regimented type of evaluation" of an employee which focused on work habits, production, and errors was conducted to determine whether an employee would be given an opportunity to become a foreman. (See Deposition of Vyt Lausauzkas at p. 24, Plaintiff's Exhibit 2.) Another employee, Kathy Christopher, who is in charge of Amoco's Affirmative Action program, stated that the supervisor and superintendent do not consult with her before promoting someone when a vacancy occurs. (See Deposition of Kathy Christopher at p. 28, Plaintiff's Exhibit 3.) Christopher also stated that promotional decisions are based on a seniority list and that vacancies are not posted. *Id.*

In his EEOC Affidavit of August 19, 1987, Gomez cited Foreman Lausauzkas' failure to promote him as one of his complaints. (Plaintiff's Exhibit 12, p. 1.) Gomez also claimed that while he has the seniority and education to become a chief operator or foreman, his supervisors, who had the authority to promote him, discriminated against him on the basis of national origin. While it is not clear at this point that Gomez will be able to prove by a preponderance of the evidence that he was denied promotional opportunities on the basis of national origin, neither is it abundantly clear at this point that the EEOC investigation which could reasonably have been expected to grow from Gomez's claims would not have included an investigation of denial of promotional opportunities as a result of discrimination on the basis of national origin. As a result, summary judgment cannot be awarded on this issue. *See McKinney v. Dole*, 765 F.2d 1129, 1135 (D.C.Cir.1985) ("Summary judgment 'should only be awarded when the truth is quite clear.' ") (quoting *Weiss v. Kay Jewelry Stores, Inc.*, 470 F.2d 1259, 1262 (D.C.Cir.1972) (footnote omitted)).

Amoco contends that even if denial of promotional opportunities due to discrimination on the basis of national origin was included in Gomez's EEOC charges, this claim is time-barred, even under the "continuing violation doctrine." Title VII provides that

[a] charge under this section ... in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency ... shall be filed ... within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier[.]

42 U.S.C. § 2000e–5(e). Under the "continuing violation doctrine," "a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.) (citing *Elliot v. Sperry Rand Corp.*, 79 F.R.D. 580, 585–86 (D.Minn.1978)), *cert. denied*, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). However, in order for the doctrine to apply, "[t]here must be a violation within the period of the statute of limitations." *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989) (citing *Young v. Will County Dep't of Pub. Aid*, 882 F.2d 290, 293 (7th Cir.1989)).

Gomez claimed that he was told that he would act as chief operator from April until August 1985, and that, under his contract, maintaining this position for thirteen (13) weeks would enable him to maintain the higher rate of pay even if he were to return to his former position. (See Deposition of John Gomez of February 22, 1991, Defendant's Appendix, Tab 1, p. 197.) Gomez also stated that foremen are chosen from among the chief operators. (See Deposition of John Gomez of February 22, 1991, Defendant's Appendix, Tab 1, p. 198.) Gomez claimed that he informed his supervisors of his desire to be considered for a

promotion, but that his tenure as chief operator was intentionally ended "in the middle" so that he would lose not only the higher rate of pay but also the opportunity to compete for a foreman's position. (See Deposition of John Gomez of February 22, 1991, Defendant's Appendix, Tab 1, pp. 198–200.) Gomez claims that this action by his supervisors was the result of intentional discrimination on the basis of national origin.

Gomez first filed charges with the Indiana Human Rights Commission on May 12, 1986. By the intake cover sheet completed on that date by Mary Hagler of the Indiana Human Rights Commission, it appears that Gomez first raised the issue of loss of promotional opportunities as a result of discrimination on the basis of national origin on May 12, 1986. By his EEOC Affidavit of August 19, 1987, Gomez specifically identified his loss of a promotion in the summer of 1985 as proof of his claim of discrimination. Amendments to charges to cure omission will relate back to the time charges were first filed. *Philbin*, 929 F.2d at 323 (quoting 29 C.F.R. § 1601.12(b)).

If one subtracts 300 days from May 12, 1986, the statute of limitations requires that a violation of Title VII occur on or after July 4, 1985 in order for Gomez to pursue this claim in this action. While it is not clear that " 'in the middle' of the summer of 1985" places Gomez's claim of intentional discrimination on or after July 4, 1985, nor is it clear that the allegedly discriminatory action by his supervisors occurred prior to that date. Therefore, summary judgment may not be awarded on this issue. *McKinney*, 765 F.2d at 1135 (citation omitted).

Finally, Amoco contends that summary judgment should be awarded on all of Gomez's other claims because he refused an offer which would have afforded him full relief at the close of the administrative proceedings. Summary judgment may be appropriate where an individual who claims employment discrimination rejects an offer of full relief made during administrative proceedings and opts to pursue his claims in a civil action. *Wrenn v. Secretary, Dep't of Veterans Affairs*, 918 F.2d 1073, 1074 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1625, 113 L.Ed.2d 721 (1991). In such a case there must be no issue of fact as to whether the relief offered would have been full, or as to whether the claimant refused it. *Id.* at 1074–1077.

In this case, there is an issue of fact as to whether the EEOC investigation of Gomez's claims based on the information he supplied could reasonably have been expected to include denial of or loss of promotional opportunities as a result of intentional discrimination on the basis of national origin. Therefore, it is not clear at this point that the offer extended to him at the close of the administrative proceedings constituted an offer of full relief. Accordingly, summary judgment may not be awarded on this issue.

*Conclusion*

Based on the foregoing, the defendant's Motion for Summary Judgment is hereby DENIED.