**Andre GILMORE, Plaintiff,**

**v.**

**LOCAL 295, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Anthony Calagna as President and as an Individual, Salvatore Cataldo, as Business**

---

Agent and as an Individual, Airborne Express, Bob Brazier as President and as an Individual, Steve Eller as Regional Field Service Manager and as an Individual, and Christopher Brower as Field Services Supervisor and as an Individual, Defendants.

No. 91 Civ. 1860 (GLG).

United States District Court, S.D. New York.

Aug. 6, 1992.

Andre Gilmore, pro se.

Law Office of Ira Drogin, New York City (Stephen H. Gelb, of counsel), for Local 295.

Kreitzman, Mortensen & Simon, New York City (Eric P. Simon and Brian K. Saltz, of counsel), for Airborne Freight.

### OPINION

GOETTEL, District Judge.

#### BACKGROUND

Andre Gilmore began working for Airborne Express, a subsidiary of Airborne Freight Corporation in October 1986 as a driver at the company's facility in Portchester, N.Y. While he was employed at Airborne, he was a member of Local 295, the International Teamster's Union shop representing Airborne's drivers.

Procedures for hiring, terminating and disciplining Union employees at Airborne are governed by a collective bargaining agreement ("CBA") between the company and Local 295. The agreement contains a Progressive Disciplinary System that provides for staged penalties that grow in-creasingly more severe with repeated infractions of company procedures. Termination is a Stage III penalty.

Airborne suspended Gilmore for the first time in January 1989 for allegedly failing to follow company regulations. In May, after he had been reinstated, Gilmore applied for the position of dispatcher. His application was denied. He claims that, even though he and another African–American had more seniority, the job was given to a Caucasian applicant. In August, Gilmore again applied for the dispatcher position. He claims that, even though he was qualified for the position, he was again denied.

Plaintiff was put on disciplinary suspension for a second time in September 1989 for allegedly taking unauthorized overtime and violating other company procedures.[1] This time, the company issued him a Warning Letter, as required by the CBA. The letter informed plaintiff that, if he committed further infractions of company rules within a one year probationary period, he would be discharged in accordance with the Progressive Disciplinary System.

On January 6, 1990, plaintiff and several other employees allegedly caused a delay in the loading of delivery trucks at one of Airborne's loading docks. The employees demanded that the supervisor produce proof that the delivery trucks were insured. Gilmore purportedly stated that the drivers were not required to drive unless they were assured that insurance on their vehicle was up-to-date. Airborne alleged that the workers had engaged in a "job action" or work stoppage in violation of the CBA. The agreement stated that workers could not engage in "self-help" but had to rely on union bargaining procedures outlined in the CBA to resolve any grievances against the company.

On January 22, 1990, the plaintiff and several other employees who had been present during the alleged "job action" received disciplinary letters from Airborne. Plaintiff received a Stage III penalty—ter-

---

**1.** It is unclear whether Gilmore was discharged or merely suspended without pay. In either case, he was reinstated following the company disciplinary action.

mination—because the incident had occurred within the one year probationary period following his last suspension.

The Union protested the disciplinary action and the company agreed to arbitration. After a hearing, the arbiter held that a work stoppage in violation of the CBA had occurred and the record "did not show one scintilla of credible evidence that Gilmore's discharge resulted from anything other than his participation in the January 6 job action and his prior disciplinary record." Arbiter's Decision at 17.[2] The arbiter, therefore, affirmed plaintiff's termination by Airborne.

During the course of his employment at Airborne, plaintiff filed complaints with four different government agencies alleging wrongdoing by Airborne, the Union, or both. Shortly after he was denied the dispatcher position, he filed a complaint alleging unsafe working conditions at Airborne with the Occupational Safety and Health Administration ("OSHA").[3] Immediately following his second suspension in September 1989, plaintiff filed a complaint with the Department of Labor, Office of Federal Contract Compliance Programs ("OFCCP") alleging that Airborne's denial of his application for the dispatcher position was the result of racial discrimination. He also alleged that he was being harassed on the job because of his race. OFCCP notified plaintiff that it would investigate his charges and that it had forwarded a copy of his complaint to the Equal Employment Opportunity Commission ("EEOC").

The EEOC sent plaintiff a charge form and, on January 29, 1990, he filed a complaint under Title VII of the Equal Rights Act of 1964. Plaintiff named Airborne Express as the sole respondent. He alleged that he was being "subjected to harassment, verbal and physical abuse, denied promotions for which [he was] well-qualified" and that his September 6, 1989 termination by Airborne had been "without just

cause." Even though he had been terminated by Airborne on January 22, just a week before filing with EEOC, he listed September 1989 as the date of Airborne's most recent discrimination against him.

On April 10, 1990, plaintiff filed a fourth complaint, this time with the National Labor Relations Board ("NLRB"). Local 295 was named as respondent. In this complaint, plaintiff charged that he had not been adequately represented by the Union at the arbitration hearings concerning the January "job action." He also claimed that another participant in the alleged incident had received a less severe penalty for his participation in the incident because the other employee was related to a Union official.

Although the EEOC issued plaintiff a notice of Right To Sue when he requested it, no other government agency found sufficient evidence to issue a complaint in response to plaintiff's charges. On January 30, 1990, OFCCP notified plaintiff that it had investigated his charges and found insufficient evidence of discrimination against him or any other Airborne employee.

On April 30, 1992, the NLRB notified plaintiff that it had found insufficient evidence of racially motivated retaliation or discrimination by either Airborne or Local 295. The Board also investigated the arbitration hearings and found that they were "fair and regular." The NLRB concluded that plaintiff's discharge was the result of the non-discriminatory application of the Progressive Disciplinary System. Like OFCCP, the NLRB refused to issue a complaint on plaintiff's charges. On May 8, 1992, plaintiff requested a review of the Board's decision. It is presumed that this review is still in progress.

After receiving his notice of Right to Sue from EEOC, plaintiff commenced this suit

---

2. The Union attorney was apparently unpleasantly surprised to find that Gilmore had, with the assistance of outside counsel, obtained affidavits from several employees and served subpoenas on several others whom he wished to testify at the hearings. The Union attorney did not call plaintiff's witnesses or use the affidavits that plaintiff submitted.

3. There is nothing in the record to indicate what, if any, action was taken on the OSHA complaint.

on March 19, 1991. He alleges that the Union and Airborne defendants violated his civil rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, 42 U.S.C. § 1981. He alleges that the Union and Airborne management conspired to use the disciplinary system to retaliate against him for speaking out against racially discriminatory practices at Airborne. He also alleges that the company's denial of his application for the dispatcher position was racially motivated. Finally, plaintiff charges Local 295 with violating the Union Bill of Rights, § 101 of the Labor Management Relations Disclosure Act ["LMRDA"], 29 U.S.C. § 411. Plaintiff claims that by inadequately representing him at the arbitration hearings, the Union "aided and abetted" the company in retaliating against him for exercising his right to speak out against discrimination at Airborne.

Plaintiff seeks damages, back pay, reinstatement and promotion as well as pay differential and possible attorney's fees from Airborne, Local 295 and the individual defendants. He also seeks compensation for emotional pain and suffering and consequential damages resulting from his loss of employment. Plaintiff additionally demands a trial by jury.

Before us now are the Union's motions to dismiss the complaint in its entirety and Airborne's motions to dismiss the claims against it under 42 U.S.C. § 1981 and to limit the Title VII action to parties and events described in the EEOC charge. Airborne additionally seeks to impose sanctions against plaintiff under Fed.R.Civ.P. 11 for filing what it describes as a groundless suit.

## I. PLAINTIFF'S CIVIL RIGHTS CLAIMS

### A. *The Civil Rights Act of 1991: Retroactivity*

Perhaps unknowingly, but certainly unerringly, plaintiff has embarked into the thicket of legal controversy surrounding the enactment of the Civil Rights Act of 1991. Pub.L. No. 102–166, 105 Stat. 1071–1100 (to be codified at 42 U.S.C. 2000e–5(g) and 42 U.S.C. § 1981(b)).

Section 102 of the new Act creates additional remedies for civil rights violations under Title VII, 29 U.S.C. § 2000e–5 for complainants who cannot recover under 42 U.S.C. § 1981. It allows for the award of compensatory and punitive damages for intentional discrimination, including racially motivated harassment in the workplace. Such relief was previously available only under § 1981. Pub.L. No. 102–166, § 102. Jury trials of Title VII claims are also available under the new Act. *Id.*

Section 101 of the Act amends § 1981 by expanding the protection against discrimination in employment contracts. The Act overrules the Supreme Court's narrow construction of § 1981 in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) which held that § 1981 was only applicable to discrimination in contract formation. *Id.* at 179, 109 S.Ct. at 2374. In the Court's view, discriminatory practices regarding job promotions were actionable under § 1981 only if the promotion created a new and distinct employment relationship, amounting to a new contractual opportunity refused to the employee by the employer. *See Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Thus, under *Patterson*, Gilmore's claim of wrongful discharge would be barred. By contrast, the 1991 Act amends § 1981 to include a prohibition of discrimination in the "making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Pub.L. No. 102–166, § 101(2)(b).

Clearly, plaintiff's § 1981 claim of discriminatory treatment during the course of his employment and his demand for a trial by jury will survive if the new Act is applied retroactively. Additionally, if the 1991 Act applies retroactively, plaintiff's claim for punitive damages under § 2000e will survive defendants' motions to dismiss.

The language of the Act is ambiguous on the issue of retroactivity. Section 402(a) states that "this Act and the amend-

ments made by the Act shall take effect upon enactment." Pub.L. No. 102–166, § 402(a). Some courts have interpreted this language to support a legislative intent that the Act be applied retroactively to pending cases while others have held that the language supports application of the law only to cases commenced after enactment. *See Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992) (listing district courts ruling for and against retroactivity). In attempting to resolve the ambiguity, several courts have relied on the Supreme Court's directive that "statutes affecting substantive rights and liabilities are presumed to have only prospective effect." *Bennett v. New Jersey,* 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985). In *Stout v. International Business Machines, Inc.,* 798 F.Supp. 998 (1992), we held that the new remedies of the 1991 Act affected substantive rights and liabilities and therefore should not be applied retrospectively because to do so would impose manifest injustice on parties in pending civil rights litigation. Our holding comports with the unanimous rulings against retroactivity by the five courts of appeals which have had occasion to decide the issue as of this date. *See Johnson v. Uncle Ben's Inc.,* 965 F.2d 1363 (5th Cir. 1992); *Luddington v. Indiana Bell Telephone Co.,* 966 F.2d 225 (7th Cir.1992); *Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992); *Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.1992), *petition for cert. filed,* 60 U.S.L.W. 3881 (June 11, 1992); *Mozee v. American Commercial Marine Service Co.,* 963 F.2d 929 (7th Cir.1992).

B. *Failure to state a claim under 42 U.S.C. § 1981*

Plaintiff has no cause of action for wrongful termination or discriminatory application of the disciplinary system under § 1981. The acts he complains of and the filing of his suit all occurred after the Supreme Court's decision in *Patterson* and before the passage of the 1991 Act. Because *Patterson* was the rule governing the parties' rights and liabilities during the time in dispute, justice would not be served by imposing new substantive liabilities on the defendants by the retrospective application of the 1991 Act to their past conduct. *Patterson* limits the scope of § 1981 to "the making and enforcement of contracts" and therefore plaintiff's claims of discriminatory termination and discipline are not actionable. *Long v. AT & T Information Systems,* 733 F.Supp. 188, 195 (S.D.N.Y. 1990).

■ Additionally, Airborne's denial of plaintiff's application for the dispatcher position does not amount to refusal to enter into a new contractual relationship. Under the rule of *Patterson,* an employer's refusal to promote a minority employee is not actionable under § 1981 unless the change of position would create a "new and distinct relationship" between the employee and employer. *Patterson,* 491 U.S. at 185, 109 S.Ct. at 2377. A new contractual opportunity is not created merely by a raise in pay, but must include an increased level of supervisory responsibility or a substantial change in duties. *See Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908, 910 (4th Cir.1989) (denial of promotion from clerk to supervisor is actionable under § 1981 because of increased supervisory responsibility); *Green v. Kinney Shoe Corp.,* 728 F.Supp. 768, 777 (D.C.Cir.1989) (significant differences in responsibility and employer evaluation of employee create inference of new contractual relationship); *Luna v. City and County of Denver,* 718 F.Supp. 854, 856 (D.Colo.1989) (substantial differences in supervisory responsibility, duties performed and required qualification made denial of promotion from project inspector to engineer actionable under § 1981). Failure to promote an employee to a job that is distinguished only by an increase in salary does not constitute a failure to promote under § 1981. *Williams v. National Railroad Passenger Corp.,* 716 F.Supp. 49, 51 (D.C.Cir.1989). However, if the denied position would have entailed a new and different method of reporting to the employer, evidence of an actionable denial of promotion might be found. *Williams v. Chase Manhattan*

*Bank, N.A.,* 728 F.Supp. 1004, 1008 (S.D.N.Y.1990).

Gilmore does not allege that the dispatcher position carries any supervisory responsibilities. Additionally, he does not claim that dispatching trucks is a substantial change of duty from driving a truck. Although a dispatcher is paid $19.50 more per week than a driver, this alone is not enough to create a new contractual relationship with Airborne. Finally, dispatchers do not stand in a different relationship to Airborne's management than drivers. Both are represented by the union. Therefore, the dispatcher position is not sufficiently distinct from the driver position to constitute a new contractual relationship between plaintiff and Airborne.

Since plaintiff fails to state a claim under Fed.R.Civ.P. 12(b)(6), Airborne's and the Union's motions to dismiss are granted.

## C. *Jurisdiction under Title VII*

On January 29, 1990, one week after plaintiff received his termination letter from Airborne, he filed a complaint with the EEOC. The complaint states in its entirety:

> [Airborne Express] has discriminated against me in that I am being subjected to harassment, verbal and physical abuse, denied promotions for which I am well-qualified. On September 6, 1989, I was terminated without just cause. I and other Black employees are denied promotion while our white counterparts are not. I believe I have been discriminated against because of my race (Black), in violation of Title VII of the Civil Rights Act of 1964, as amended.

Plaintiff alleges that, in February 1990, he forwarded a copy of his termination letter from Airborne to the EEOC, intending that the agency amend his charge to include this additional action by his employer. EEOC issued plaintiff a notification of Right Sue, naming Airborne Express as respondent, on March 4, 1991. Although the plaintiff only named Airborne in his charge to the EEOC, he has brought suit against Airborne and its officers, Brazier, Eller and Brower, as well as Local 295 and its officers, Calagna and Castaldo alleging violations of Title VII.

The Union defendants move to dismiss these claims, arguing that the court lacks jurisdiction over parties not named in the administrative charge. Airborne moves to dismiss the claims against defendants Eller and Brower on the same grounds. Airborne further moves to dismiss the portions of plaintiff's complaint which reference discriminatory acts not mentioned in the EEOC complaint. This would limit plaintiff's complaint against Airborne to charges of discrimination in job promotions and eliminate his allegations that Airborne discriminated against him in the disciplinary procedures that led to his eventual termination from employment.

### 1. *The EEOC charge as a basis for personal jurisdiction*

The statutory scheme of the Civil Rights Act of 1964 requires that a complainant first assert claims at the agency level, either through the Equal Employment Opportunity Commission ("EEOC") or the analogous state agency. *Ritzie v. City University of New York,* 703 F.Supp. 271, 278 (S.D.N.Y.1989). EEOC regulations require that a charge contain "the full name and address of the person against whom the charge is made, if known [to the plaintiff]." 29 C.F.R. § 1601.12(a)(3) (1992). A charge is "sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties." *Id.* at § 1601.-12(b). The charge serves the two-fold purpose of providing notice to the charged party and insuring that all relevant parties are brought before the agency so that the agency can attempt to negotiate voluntary compliance with the Act. *Evans v. Sheraton Park Hotel,* 503 F.2d 177, 183 (D.C.Cir. 1974).

In subsequent litigation of the claims, the district court generally has jurisdiction only over those parties named as respondents in the agency charge. *See* 42 U.S.C. § 2000e–5(f)(1); *Streeter v. Joint Industry Brd. of Electrical Industry,* 767 F.Supp. 520, 523 (S.D.N.Y.1991); *see also*

*Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir.1991). However, the courts have assumed a flexible stance in interpreting Title VII's procedural provisions. *Egelston v. State Univ. College at Geneseo*, 535 F.2d 752, 754–55 (2d Cir.1976), and two exceptions to the general rule of inclusion have been created. First, a defendant not named in the charge may be sued if the defendant has a substantial identity with or is, in essence, in an agency relationship with the named defendant. *Johnson v. Palma*, 931 F.2d at 209. Secondly, courts will allow a plaintiff to sue a party not named in the charge if the plaintiff alleged facts in the EEOC charge from which the agency could have inferred that the named and unnamed parties were part of a common discriminatory scheme. *Id.* at 210; *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666 (9th Cir.1980); *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977), *cert. denied*, 449 U.S. 949, 101 S.Ct. 351, 66 L.Ed.2d 212 (1980).

■ Here, the plaintiff's charge to EEOC did not name Local 295. Local 295, as bargaining representative for union employees, does not have an identity of interest or an agency relationship with Airborne, the employer. Additionally, the charge alleges denial of promotional opportunity and harassment on the job. Absent any reference to the Union in the charge, EEOC could not infer collusion between the company and the union. Although the plaintiff alleges that he requested the Commission amend his charge to include his final termination from Airborne, he does not state that he requested an amendment to add the Union as an additional respondent. To require the Union to defend against plaintiff's claim here would violate Title VII's scheme for providing notice to respondents. Accordingly, plaintiff's Title VII claims against the Union defendants are dismissed.

■ In contrast, the individual Airborne defendants, Brazier, Eller and Brower, clearly stand in an agency relationship to Airborne Express, the respondent named in plaintiff's EEOC charge. Bob Brazier is Airborne's President. Steve Eller is Airborne's Regional Field Manager and Christopher Brower is the Field Service Manager. In these capacities, these defendants act as agents for Airborne Express. *See* 42 U.S.C. 2000e(b). Additionally, the scope of the EEOC's investigation might reasonably have included the possibility of discrimination by individuals in managerial positions in the company. Further, as agents of Airborne, the individual defendants would have received notice of plaintiff's complaint to the EEOC and would have participated in any conciliatory efforts conducted by the Commission. Therefore, we decline to dismiss the charges against defendants Brazier, Eller and Brower.

2. *The EEOC charge as a basis for subject matter jurisdiction*

a. *The wrongful discharge complaint*

■ The administrative charge of employment discrimination provides the Commission with a factual basis for its investigation. *See* 29 C.F.R. 1601.15(B) (1992). The issuance of a Right to Sue letter empowers the court to exercise jurisdiction over the complaints alleged in the charge. *Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 23 (2d Cir. 1985), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). The Act requires that a charge contain "a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3). However, the regulations grant a complainant leave to amend a charge "to clarify or amplify allegations made therein." *Id.* at § 1601.12(b).

■ Although the plaintiff did not include his January 1990 termination in his EEOC charge, he states that he sent a copy of Airborne's termination letter to the EEOC with the intent that the agency amend his complaint to include this additional act of alleged discrimination by his employer. Taking plaintiff's allegations as true, as this court must on a motion to dismiss, we cannot find that the EEOC charge was insufficient to confer jurisdiction. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515,

92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (dismissal improper where there exists a genuine issue of material fact). Therefore, Airborne's motion to dismiss is denied as to this issue.

### b. *Plaintiff's claims of discriminatory application of the disciplinary system*

■ The court may also consider, in addition to the charges in the EEOC complaint, claims that are reasonably related to the charged conduct and are part of a continuing practice of discrimination by the employer. *Compare Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir.1984) (additional allegations addressed same course of discriminatory conduct alleged in EEOC complaint) *with Ritzie v. City University of New York*, 703 F.Supp. 271, 278–279 (S.D.N.Y. 1989) (plaintiff did not allege continuing course of conduct in administrative charge, therefore acts subsequent to the charge date are not within jurisdiction of the court). If a plaintiff alleges additional discriminatory acts that are factually different than those in the EEOC charge and are therefore not "fairly encompassed within the initial EEOC complaint," the court does not have jurisdiction over the additional claims. *Gomes v. Avco Corp. and Local 1010*, 964 F.2d 1330 (2d Cir.1992). In *Gomez v. Amoco Oil Co.*, 767 F.Supp. 191 (N.D.Ind.1991), the court upheld the district court's finding that denial of promotion and racially motivated discipline were not reasonably related. The court reasoned that the EEOC investigation of denial of promotion would entail examination of positions involved, the applicant pool and qualifications of employees considered for the job. These matters were not implicated in the Commission's investigation of a charge of racially motivated discipline. *Id.* at 195–96.

Gilmore's EEOC charge describes discrimination in promotion and an allegedly wrongful termination or suspension in 1989. In contrast, his complaint in this case alleges the discriminatory promotional practices asserted in the EEOC and adds the allegation that Airborne used its staged disciplinary system to retaliate against him for filing charges of racial discrimination against the company with various government agencies.

■ The allegations of discrimination in Airborne's job promotion policy are certainly encompassed in plaintiff's initial charge to the Commission. The charge also states that Airborne discharged the plaintiff without cause in September 1989.[4] However, plaintiff did not allege that Airborne had manipulated the disciplinary system to obtain his discharge. The administrative charge is limited to a discrete reference to the single incident of his September suspension from employment and there is no allegation of a pattern or practice of discrimination in the application of the disciplinary system. Given the discrete nature of plaintiff's administrative charge, it is doubtful that the Commission would have expanded the scope of its investigation to include disciplinary procedures at Airborne. This is especially true where plaintiff did not name the Union in his charge and the Commission could therefore reasonably infer that the plaintiff was adequately represented by Local 295 in any disciplinary proceeding with the employer under the collective bargaining agreement. As in *Gomez*, the plaintiff's allegations of retaliatory discipline are not encompassed within his administrative complaint regarding discriminatory promotional practices at Airborne. Therefore, the court does not have jurisdiction over these claims. Accordingly, this portion of plaintiff's claim against Airborne is dismissed.

## II. PLAINTIFF'S CLAIMS AGAINST THE UNION DEFENDANTS UNDER § 101 OF THE LABOR MANAGEMENT RELATIONS DISCLOSURE ACT

### A. *Labor Management Relations Disclosure Act: Statute of Limitations*

A union member may bring a civil action against the union for a violation of the

---

**4.** It is unclear from plaintiff's papers whether this incident was a termination or a suspension without pay. In either event, he returned to Airborne's employ following the incident.

Labor Management Relations Disclosure Act ("LMRDA") in the district court of the district where the alleged violation occurred. LMRDA, 29 U.S.C. § 412 (1959). LMRDA does not provide for jurisdiction over the employer because "LMRDA regulates only the relationship between the union and its members and not that between an employer and his employees." *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1250 (2d Cir.1970), *cert. denied sub nom United Steelworkers of America, AFL–CIO v. Abrams*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). "Essentially the Bill of Rights is addressed to the internal affairs of the union, insuring to members equal rights and freedom of speech in the conduct of union affairs". *Id.*

 Union violations of the expressive rights guaranteed by the LMRDA are governed by applicable state statutes of limitations for personal injury actions. *Reed v. United Transportation Union*, 488 U.S. 319, 334, 109 S.Ct. 621, 630, 102 L.Ed.2d 665 (1989). Therefore, in New York, a union member's claim under LMRDA is subject to a three year statute of limitations. *Gvozdenovic v. United Airlines, Inc.*, 933 F.2d 1100, 1107–1108 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 305, —— L.Ed.2d —— (1991); *Rodnovich v. House Wreckers Union Local 95*, 817 F.2d 967, 976 (2d Cir.1987); *Testa v. Gallagher*, 621 F.Supp. 476 (S.D.N.Y.1985).

 Contrary to the Union's argument that the NLRB has exclusive jurisdiction over LMRDA claims, the Act expressly vests subject matter jurisdiction in the district court. 29 U.S.C. § 412. Further, the Union's reliance on *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), is inapposite considering the Court's more recent holding in *Reed*. *DelCostello* applied a six month statute of limitations to a "hybrid" suit brought under § 301 of the Labor Management Relations Act by an employee alleging breach of contract against his employer and breach of the duty of fair representation against his union. Gilmore's suit is not brought under § 301 of the Labor Management Relations Act, but under § 101 of the Labor Management Relations Disclosure Act, a totally different statute. Thus, his LMRDA § 101 claim is not barred by a six month statute of limitations, but instead is timely as it was filed within three years of its accrual.

B. *Plaintiffs free speech claim under the Labor Management Relations Disclosure Act*

The LMRDA, 29 U.S.C. § 411 *et seq.*, was Congress' response to investigative reports which revealed that corrupt union leadership often used threats and coercion to prevent union members from exercising their rights to vote freely in union elections or to speak out against their union leaders. Through passage of the Act, Congress hoped to bring about "regeneration of union leadership" by assuring union members freedom to attack corruption through the uninhibited use of the democratic process within the union. *See Mallick v. International Brotherhood of Electrical Workers*, 749 F.2d 771, 777 (D.C.Cir.1984) (discussing legislative history of the Act).

 Section 101(a)(2) of LMRDA, 29 U.S.C. § 411, known as the Union Members' Bill of Rights, is analogous to the First Amendment of the Constitution because it guarantees union members' rights to freedom of speech and assembly. *Reed*, 488 U.S. at 334, 109 S.Ct. at 630. A union may not discipline a member for exercising the rights guaranteed by this section. *See* LMRDA 29 U.S.C. § 412; *Breininger v. Sheet Metal Workers International Ass'n Local Union No. 6*, 493 U.S. 67, 80, 110 S.Ct. 424, 432, 107 L.Ed.2d 388 (1989). Additionally, LMRDA safeguards union members' rights to due process in matters of discipline by the union through § 101(a)(5), 29 U.S.C. § 411(a)(5), which requires that a union must afford its members a "full and fair hearing" before any discipline can be undertaken. *See International Broth. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL–CIO v. Hardeman*, 401 U.S. 233, 236–37, 91 S.Ct. 609, 612–13, 28 L.Ed.2d 10 (1971).

Although the Act makes it illegal for the Union to "fine, suspend, expel or otherwise discipline" a member for exercising his or her right to speak, "otherwise discipline" is construed to encompass only those punishments which can be directly authorized by the union to enforce its own rules. *Breininger*, 493 U.S. at 89, 110 S.Ct. at 437. Therefore, if the union retaliates against a member for expressing his views by removing his name from its hiring hall listing, this discipline would be prohibited by LMRDA. *Camporeale v. Airborne Freight Co.*, 732 F.Supp. 358, 365 (E.D.N.Y.1990), *aff'd* 923 F.2d 842 (2nd Cir. 1990); *Quinn v. DiGiulian*, 739 F.2d 637, 645 (D.C.Cir.1984). However, a union is not liable under LMRDA if an employer discharges an employee for exercising his right to speak, even if the union acquiesces in the employer's disciplinary action. *Camporeale v. Airborne Freight Co.*, 732 F.Supp. at 365. Therefore, where the employer and not the union disciplines a member for exercise of his § 101 rights, the member has no cause of action against the union under the LMRDA. *See International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL–CIO v. Hardeman*, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971); *Gross v. Kennedy*, 183 F.Supp. 750 (S.D.N.Y.1960) (union can be held liable for wrongful termination only if it has the direct power to remove an employee from his job).

Gilmore claims that Local 295 and two of its officers, defendants Calagna and Cataldo, violated § 101 of the LMRDA, 29 U.S.C. § 411, by retaliating against him for expressing his opinions about racial discrimination within the company. Plaintiff alleges that by purposefully failing to give him adequate representation at the arbitration hearings, the Union conspired with Airborne to use the company's disciplinary system to terminate his employment. In sum, plaintiff suggests that since the Union and Airborne acted together to punish him for speaking, the union should be liable for the company's wrongful termination of his employment. However, this theory has no foundation in well-established law.

For example, in a factually similar case, it was held that this type of concerted action by the union and the employer was not encompassed by LMRDA. *Camporeale*, 732 F.Supp. 358. In *Camporeale*, the plaintiff was, like Gilmore, a driver for Airborne and a member of Local 295. Airborne terminated plaintiff's employment pursuant to the Progressive Disciplinary System in the collective bargaining agreement after he had been repeatedly late for work. Plaintiff then filed suit against the company and the Union. He claimed that, by failing to pursue arbitration on his behalf, the Union aided the employer in terminating his employment for discriminatory reasons. The court held that "LMRDA simply does not offer protection to a union member from actions undertaken by the employer." *Id.* at 365. Where the union itself did not impose any discipline or oust the plaintiff from membership, the court held that "the union cannot be said to have disciplined a member for exercising his rights." *Id.*

In a distinguishable case, the collective bargaining agreement between the union and the employer gave the union's executive board the power to remove an employee from his job. When the union terminated an employee without affording him the due process guaranteed under LMRDA, the court held that the union's action was "discipline" and the employee had a cause of action under LMRDA. *Gross v. Kennedy*, 183 F.Supp. 750, 755 (S.D.N.Y.1960).

Although Gilmore claims that the union conspired with the company to use the disciplinary system to silence him, as in *Camporeale*, the union itself did not implement the discipline. It did not fine him nor did it suspend or terminate his membership in Local 295. Therefore, plaintiff cannot claim that Local 295 disciplined him for exercising his § 101 rights based on Airborne's act of terminating his employment.

C. *Plaintiff's fair representation claim*

Plaintiff's remaining contention is that Local 295 breached its duty to repre-

sent him at the hearings that led to his eventual termination. While LMRDA requires that a union member be afforded due process in union disciplinary proceedings, it does not provide protection against the union's breach of its duty to represent a member in arbitration hearings with the employer. *Hovan v. United Broth. of Carpenters and Joiners of America*, 704 F.2d 641, 644–645 (1st Cir.1983); *Bass v. International Broth. of Boilermakers*, 630 F.2d 1058, 1062–1063 (5th Cir.1980); M. Malin, *Individual Rights Within the Union* at 418 (1988). The duty of fair representation by the union at employer disciplinary proceedings is not encompassed by the LMRDA but rather is found in the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(b). A union's duty to fairly represent its members arises from the position of power held by the union as the exclusive bargaining agent of its members. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967); *see* 29 U.S.C. § 159(a). A union member who claims that he has not been adequately represented by the union may bring an action against the employer and the union, or the union alone. *Vaca v. Sipes*, 386 U.S. at 187–88, 87 S.Ct. at 915–16 (plaintiff may bring an action in district court under § 301 of the NLRA alleging breach of contract by the employer and breach of the duty of fair representation by the union); *Breininger*, 493 U.S. at 83, 110 S.Ct. at 434. An employee may seek relief from union's breach of the duty of fair representation either in federal court or before the NLRB. *Bratton v. City of Detroit*, 712 F.2d 222, 228 (6th Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984). The district court has concurrent jurisdiction with NLRB as long as NLRB review of the claim has not been invoked. *Trustees of Colorado Statewide Iron Workers (ERECTOR) Joint Apprenticeship & Training Trust Fund v. A & P Steel, Inc.*, 812 F.2d 1518 (10th Cir.1987). Gilmore has already brought his fair representation claim against the Union before the NLRB. It appears that the NLRB refused to issue a charge and plaintiff has requested a review of the Board's

decision by the General Counsel of the NLRB. We presume that review is still in process. We also note that once the review is completed, judicial review of the General Counsel's decision is available to the plaintiff. 29 C.F.R. § 102.01; *see Edna H. Pagel, Inc. v. Teamsters Local Union 595*, 667 F.2d 1275, 1280 (9th Cir.1982). Therefore, exercise of jurisdiction would be inappropriate at this time because the court would adjudicate issues identical to those under consideration by NLRB. *Campbell v. McLean Trucking Co.*, 592 F.Supp. 1560, 1565 (E.D.N.Y.1984); *see Intern. Org. of Masters, Mates and Pilots v. Trinidad*, 803 F.2d 69, 73 (2d Cir.1986). Accordingly, we decline to exercise jurisdiction over plaintiff's fair representation claim.

### III. RULE 11 SANCTIONS

Finally, we consider Airborne's motion that the court impose sanctions on the plaintiff for bringing a groundless suit. We note at the outset that plaintiff appears without counsel in this case and that it is a tradition of our justice system to accord the utmost liberality to pro se litigants, especially those seeking redress for alleged violations of their civil rights. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (pro se plaintiff held to less stringent standards than lawyers with respect to formal pleadings); *see Ortiz v. Cornetta*, 867 F.2d 146, 148 (2nd Cir.1989) (pro se plaintiff should not be penalized by strict rules which might otherwise apply if he were represented by counsel).

Since, on defendants' motions to dismiss, the court must view plaintiff's factual allegations as true, it is premature for Airborne to ask the court to determine whether plaintiff's claims are adequately grounded in fact. *Egelston*, 535 F.2d at 754. Additionally, given the current state of flux in civil rights jurisprudence, the courts should construe a pro se plaintiff's pleadings with liberality. *Evans v. Sheraton Park Hotel*, 503 F.2d at 183 (Congress intended Title VII as remedial legislation and therefore procedural provisions should not serve as stumbling blocks to pro se plain-

tiffs). Accordingly, Airborne's motion to impose sanctions on plaintiff under Fed. R.Civ.P. 11 is denied without prejudice to its renewal at a later date.

## CONCLUSION

In conclusion, plaintiffs claims under the Civil Rights of 1866, 42 U.S.C. § 1981 are dismissed against all defendants in that plaintiff fails to state a claim under the Act as it stood on the date of filing this complaint.

Plaintiff's Title VII and LMRDA claims against the Union defendants are dismissed. Absent any reference to the Union in the EEOC charge, the court lacks jurisdiction over this portion of plaintiff's complaint. Plaintiff fails to state a claim under LMRDA for breach of the Union's duty to represent him in arbitration with his employer. Further, plaintiff's fair representation claim is now under review by the NLRB. This court will not exercise jurisdiction where the identical issue is concurrently before the General Counsel of the NLRB.

Finally, Airborne's motion for partial dismissal of plaintiff's claim under Title VII is granted in part. The motion to dismiss the charges against Airborne officers Brazier, Eller and Brower is denied. The motion to dismiss the charge of discriminatory discipline is granted. The motion to dismiss the charge of discriminatory discharge in January 1990 is denied; however, plaintiff is directed to submit a copy of his amended charge to the EEOC. The parties will have three months from the date of this decision to complete discovery.

SO ORDERED.