Patricia BRIGHT, Plaintiff,

v.

LE MOYNE COLLEGE and International Brotherhood of Teamsters Local 3, Defendants,

No. 00–CV–1933.

United States District Court, N.D. New York.

Feb. 18, 2004.

Patricia Bright, Fayetteville, NY, Plaintiff Pro se.

Hancock & Estabrook, LLP, Syracuse, NY (John T. McCann, of counsel), for Defendant Le Moyne College.

Blitman & King, LLP, Syracuse, NY (Donald D. Oliver, of .counsel), for Defendant International Brotherhood of Teamsters Local 317.

## MEMORANDUM DECISION AND ORDER

MUNSON, Senior District Judge.

### BACKGROUND

Plaintiff brings this action *pro se* against her former employer defendant Le Moyne College ("Le Moyne") and her bargaining labor representative Teamsters Local 317

("the Union"). Plaintiff's complaint alleges that she was the victim of sex and racial discrimination and retaliation during her employment at Le Moyne, and that defendant Union breached its duty of fair representation ("dfr") by discriminating against her in the manner it dealt with the grievances she filed against Le Moyne, all in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, et seq.

Plaintiff began working for defendant Le Moyne College "(Le Moyne") on July 6, 1999, as a custodian for the College's athletic facilities. Custodial staffing needs are partially based on the type and number of events occurring on campus. When she was hired, plaintiff was told that the job required flexible hours and variations in the work week, including evening and weekend work.

In the fall of 1999, plaintiff was assigned to work the Saturday evening shift on several occasions. In November 1999, fellow employee, Richard Davidson, requested a change in assignment so he would not have to work every Saturday evening. Having begun working at Le Moyne July 1998, he was senior to plaintiff. Plaintiff and Richard Davidson were both represented by Teamsters Local 317 ("the Union") at that time. Le Moyne decided that the most equitable solution was to have the two employees rotate Saturday evening work periods. The two employees were told of this arrangement on January 13, 2000, by the Assistant Facilities Manager, Daniel Scheen. The agreement did not effect plaintiff's wages, benefits or promotion opportunities.

Plaintiff filed a grievance with the Union objecting to the shift rotation agreement. However, the work schedule rotation was within the terms of and conditions of her job and the collective bargaining agreement between Le Moyne and the Union.

Approximately one month after the new work schedule was in effect, plaintiff filed a discrimination charge against Le Moyne with the Equal Employment Opportunity Commission ("EEOC"), alleging that the change in her work schedule was illegally based on her race and sex. Upon investigating the charges, they were dismissed by the EEOC. Plaintiff resigned her position with Le Moyne on July 12, 2000, and filed a second charge with the EEOC claiming that she was subjected to retaliation after filing her first charge with the EEOC.

Plaintiff's second charge had several allegations of retaliatory on the job conduct. They were: that she was required to punch in and out for lunch breaks while other employees were not; was not invited to social events; that co-workers were instructed not to talk to her; and that her incident reports were ignored. After investigating plaintiff's second claim charges, the EEOC dismissed this complaint.

In June 2000, plaintiff was twice exposed to polyurethane, an non-hazardous substance applied to the bleachers in the gymnasium, but one she claimed she had a personal sensitivity to. On each exposure, she left work before the end of her shift without notice or authorization. Plaintiff was informed that payment for her lost time would be considered if she furnished a suitable written report from her doctor describing her ailment and need to leave work. This report was not forthcoming, and she did not respond to attempts by Le Moyne's Worker's Compensation Coordinator to contact her. Nevertheless, plaintiff was paid for her time off before her resignation in July 2000.

Le Moyne has a Equal Employment Opportunity and Affirmative Action Policy ("EEO/AA") that specifically prohibits racial harassment and set forth procedures

for investigating complaints. Plaintiff did not make any complaints under this policy or to her supervisors regarding any verbal abuse or other harassing behavior by her fellow employees. She did complain to Le Moyne's Human Resources that she was upset that a copy of George magazine, published by the late John F. Kennedy, Jr., was left on her janitor cart opened to an article which plaintiff believed to be racially offensive. Human Resources forwarded the complaint to the EEO/AA officer for investigation the same day it was received, July 5, 2000. Plaintiff was notified of this action, but failed to respond to several attempts by the EEO/AA office on July 6th and 7th to contact her. Before further action could be taken, plaintiff resigned on July 12, 2000.

During her period of employment at Le Moyne, plaintiff filed grievances with defendant Union on January 28, 2000. These grievances are: changes in her work shift schedule; June 29, 2000, discrimination due to her union activity; and July 7, 2000, not paid for her time when she left to leave work to obtain medical attention. The Union advised Le Moyne that it intended to have plaintiff's three grievances arbitrated. In a letter dated July 12, 2000, plaintiff advised the Union that she had resigned from Le Moyne's employment but "to keep all records concerning my grievances and pursuant of arbitration," because these documents would be needed in the federal case she was instituting. (Ex. I, Mark May aff'd.)

The Union was not named as a party in either of the complaints against Le Moyne that plaintiff filed with the EEOC.

Currently before the court is a motion by each defendant for summary judgment dismissing the complaint as against it pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has entered opposition to these two motions.

## DISCUSSION

Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded ... as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(quoting Fed.R.Civ.P. 1). In determining whether there is a genuine issue of material fact a court must resolve all ambiguities and draw inferences against the moving party. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)(*per curiam*). An issue of credibility is insufficient to preclude the granting of a motion for summary judgment. Neither side can rely on conclusory allegations or statements in affidavits. The disputed issues of fact must be supported by evidence that "could not lead a rational trier of fact to find for the non-moving party." *Mashusita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Nor will factual disputes that are irrelevant to the disposition of the suit under governing law preclude any entry of summary judgment. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509.

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert.* denied, *sub nom. Leeke v. Gordon*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 431 (1978), and a federal district court is charged with liberally construing and interpreting a complaint filed by a *pro se* litigant "to raise the

strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), to allow development of a potentially meritorious claim. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). When a federal court is evaluating a *pro se* petition, the petitioner's allegations are assumed to be true. *Fine v. City of New York,* 529 F.2d 70, 74 (2d Cir.1975). Examining the *pro se* complaint under this less stringent standard, this action should be allowed to go forward.

Summary judgment movants must give *pro se* litigants with actual notice, provided in an acceptable manner, of the consequences of the *pro se* litigant's failure to comply with the requirements of Rule 56.

■ Rule 56 requires that "[a]n adverse party may not rest upon the mere allegations of the complaint or denials of the ... pleadings, but [rather] the .... response, by affidavits or other documentary evidence as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). Since it is not obvious to a layman that when his opponent files a motion for summary judgment supported by affidavits, she must file her own affidavits contradicting her opponent's if she wants to preserve factual issues for trial, either the district court or a moving party is to supply the *pro se* litigant with notice of the requirements of Rule 56. *McPherson v. Coombe,* 174 F.3d 276, 280–81 (2d Cir.1999). "[A] district court need not advise a *pro se* litigant as to the nature of summary judgment where an opposing party has already advised the litigant with the requisite notice ... or where the record makes clear that the litigant understood the nature and consequences of summary judgment." *Id.* at 281.In the case at bar, defendant Union did provide the required Rule 56 notice to plaintiff when it

served her with its motion for summary judgment on April 11, 2003.

■ When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the opposing party must present significant probative evidence and sworn affidavits to create a genuine issue of fact. *Victoria v. O'Neill,* 688 F.Supp. 84 (D.Conn.1988). This burden is not altered simply because plaintiff is a *pro se* victim. "At some point in a lawsuit, even *pro se* litigants must make clear to the court their claims and facts they believe entitle them to specific relief." *Salahuddin v. Coughlin,* 781 F.2d 24, 29 (2d Cir.1986).

The court will first address plaintiff's Title VII claim against Le Moyne. Plaintiff contends that she was the victim of sex and racial discrimination and retaliation during her employment at Le Moyne. She maintains that she was subjected to unequal terms and conditions of employment and denied workers compensation benefits.

■ Under the analytical scheme established for employment discrimination cases by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), if a plaintiff makes out a *prima facie* case of prohibited discrimination, the burden shifts to the defendant to advance admissible evidence of a legitimate non-discriminatory reason sufficient to support a finding by a rational trier of fact that the alleged discrimination was not a cause of the challenged employment action, *id,* at 802, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Heyman v. Queens Village Committee for Mental Health for Jamaica Community Adolescent Program,* 198 F.3d 68, 72 (2d Cir.1999). If such evidence is advanced by the defendant, the plaintiff then must show that the discrimination was more likely than not a motivating factor in the adverse employment action.

*McDonnell Douglas,* 411 U.S. at 805, 93 S. Ct 1817. If the plaintiff is unable to rebut the defendant's reason, summary judgment may be granted in favor of the defendant. *James v. New York Racing Association,* 233 F.3d 149, 154 (2d Cir.2000). It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff". *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

■ To establish a *prima facie* case of employment discrimination the plaintiff must first show that: 1) she is a member of a protected class; 2) her job performance was satisfactory; 3) she suffered an adverse employment action; and 4) the action occurred under conditions giving rise to an inference of discrimination. *McDonnell Douglas* at 802, 93 S.Ct. 1817.

On February 23, 2000, plaintiff filed a complaint with the EEOC claiming that when she was hired by Le Moyne, she was not told that she would be working different shifts, but her work schedule was being changed to include Saturday evenings because another employee wanted to spend more time with his family and didn't want to work Saturday evenings. This action subjected her to different terms and conditions of employment because of her race and sex in violation of Title VII. Plaintiff also filed a grievance with the Union about her shift change.

■ To state a *prima facie* case under Title VII, plaintiff must show that she suffered an adverse employment action. An adverse employment action is "materially adverse in the terms and conditions of employment." *Galabya v. New York City Board of Education,* 202 F.3d

636, 640 (2d Cir.2000). A material adverse change must be "more disruptive than mere inconvenience or an alteration of job responsibilities." *Id.* Examples of such a change include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indicies unique to a particular situation." *Id.* An employment action that is neutral or beneficial is inadequate to establish a *prima facie* case. That plaintiff expressed a preference for one shift is insufficient to conclude that her transfer was an adverse action. *Doe v. Dekalb County School District,* 145 F.3d 1441 (11th Cir.1998).

■ Whether an employment action is "adverse" is an objective determination. "[I]f a transfer is truly lateral and involves no significant changes in an employee's condition of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of a transfer adverse employment action." *Sanchez v. Denver Public Schools,* 164 F.3d 527, 532 n. 7 (10th Cir.1998). Changes in duties or working conditions that cause no material disadvantage, such as plaintiff's reassignment will not establish the adverse conduct required to make a *prima facie* case. *McDonnell Douglas,* 37 F.3d 379, 382 (8th Cir.1994).

■ A transfer is an adverse employment action if it "results in a change of responsibilities so significant as to constitute a set back to plaintiff's career." *Galabya,* 202 F.3d at 640. A "purely lateral transfer" that involves no demotion in form or substance is not a material adverse action. *Id.* (citing, *Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996)). The "key inquiry 'with regard to an involuntary transfer is

whether the transfer constitutes a negative employment action tantamount to a demotion.'" *Id.* (quoting, *Patrolmen's Benevolent Association of the City of New York, Inc. v. City of New York,* 74 F.Supp.2d 321, 335 (S.D.N.Y.1999).

■ In essence, the transfer must create a "materially significant disadvantage," which may be shown by evidence of a transfer to a position that is materially less prestigious, less suited to ones skills, or less conductive to advancement. *Id.*

■ Plaintiff's transfer was not an adverse employment action. She offers no evidence of differences between the two shifts in pay, benefits, responsibilities, opportunity for advancement or other terms, conditions and privileges of employment. There is no evidence that it was a permanent change in plaintiff's work shift. She had previously worked Saturday evenings and was asked to rotate Saturday evening work shifts with a senior co-worker. An employment action that is neutral or beneficial is inadequate to establish the *prima facie* case. That plaintiff expressed a preference for one shift is insufficient to conclude that her transfer was an adverse action. *Doe v. Dekalb County School District,* 145 F.3d 1441 (11th Cir.1998).

■ In its Collective Bargaining Agreement with the Union, Le Moyne is reserved the right, upon proper notice, to assign work at its installations at any time. (Article XII *Section 2:* ). Moreover, the newspaper want ad and the job posting at Le Moyne for plaintiff's position clearly stated that the work would require varied hours. Le Moyne had a valid, non-discriminatory reason for changing plaintiff's work schedule.

Title VII provides that "[i]t will be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by Title VII. 42 U.S.C. § 2000e–3(a)." The objective of this section is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice. *Manoharan v. Columbia University College of Physicians and Surgeons,* 842 F.2d 590, 593 (2d Cir.1988). A retaliation claim is also examined under the analytical scheme set forth in *McDonnell Douglas. St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993).

■ A *prima facie* case of retaliation under Title VII requires the plaintiff to show "[1] participation in a protected activity by opposing a practice made unlawful by Title VII; [2]that the employer was aware of that activity; [3]that she suffered adverse employment action; and [4]that there was a causal connection between the protected activity and the adverse employment action." *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996). With respect to the first element, participation in a protected activity, the plaintiff need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a "good faith, reasonable belief that the underlying employment practice was unlawful" under that statute. *Id.* The reasonableness of plaintiff's belief is to be assessed in light of the totality of the circumstances, *Reed v. A.W. Lawrence & Co.,* 95 F.3d at 1178. As to the second element, implicit in the requirement that the employer was aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII.

There is no disagreement that plaintiff engaged in a protected activity when she

filed her first grievance with the Union about her work shift change, filed her EEOC charge, and commenced her lawsuit. Rather the dispute centers on whether plaintiff was subjected to any adverse and disadvantaging employment actions and, if so, what causal connection, if any, exists between those actions and her protected activities.

 Plaintiff asserts that after she filed her first EEOC complaint, Le Moyne retaliated against her by subjecting her to different terms and conditions of employment, to wit, instructing co-workers not to speak to her, ignoring her incident reports, not receiving wages for time off due to a job related injury, having to punch out and in for lunch breaks and not inviting her to social functions. Furthermore, when she reported that she was verbally abused by a fellow employee, and also found a racially offensive magazine open on her work cart, no action was taken by her employer. Plaintiff states that she resigned her position on July 7, 2000, because of these events.

She was required to punch in and out for lunch periods and other employees were not. The affidavits of plaintiff's boss, Daniel Sheehan, Le Moyne's Assistant Facilities Manager, and Lynn McMartin, Le Moyne's Human Resources Director, both point out that it was the policy of the Athletic Center where plaintiff worked, that all employees leaving the facility for their lunch periods were required to punch in and out. (Sheen Aff.¶ 7, McMartin Aff. ¶ 8).

She was not invited to employee social functions.

McMartin's affidavit states that there was only one employee social function that took place during the period plaintiff was employed at Le Moyne and that was the summer picnic in June, and she recalls that plaintiff attended this function with a guest. (McMartin Aff.¶ 8).

She did not receive wages for time off due to a job related injury.

Even though she left work on two occasions without notice or authorization due to this injury, and never provided Le Moyne with medical documentation of her injury and needed to be out of work, plaintiff admits in ¶ 10 of her Response Affidavit–College, that Le Moyne did pay her wages for this time off.

Le Moyne instructed her co-workers not to speak with her.

Plaintiff does not state when or who gave this instruction, however, in her Response Affidavit–College, at ¶ 8, she indicates that Lynn McMartin did not give the instruction, and at ¶ 13 that she had a good working relationship with Dan Sheehan. Plaintiff may have misinterpreted a directive Dan Sheehan issued that all requests for custodial services be made through him rather than to the custodial and maintenance staff directly in order to permit him to prioritize work assignments and efficiently staff the facilities. (Sheehan Aff. ¶ 10).

Her incident reports were ignored.

Attached to Lynn McMartin's affidavit are copies of incident reports filed in response to various concerns raised by plaintiff after the filing of her first charge with the EEOC in February 2000. There is no indication that further action was needed or asked for by plaintiff.

 She was verbally abused by fellow employees.

Le Moyne has an Equal Employment Opportunity/Affirmative Action Policy ("EEO/AA") which specifically prohibits racial harassment and has procedures in place for complaint investigations in this area. Plaintiff never made a complaint under the EEO/AAC program regarding any verbal abuse from her fellow employees. (Mc Martin Aff. ¶ 11). Furthermore,

hostility from fellow employees is not an ultimate employment decision and thus not an adverse employment action. *Carter v. New York Department of Corrections,* 7 Fed.Appx. 99, 102–03 (2d Cir. Apr. 5, 2001)(citing *Mattern v. Eastman Kodak Company,* 104 F.3d 702, 707 (5th Cir.), *cert. denied,* 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260(1997)).

■ She found a magazine on her work cart open to a racially offensive article, but no action was taken by her employer.

Plaintiff did complain about this matter to Lynn McMartin, who, on her own initiative, quickly forwarded the complaint to the EEO/AA office for investigation. Plaintiff was notified of this action, but never responded to several attempts by the EEO/AA to contact her for further information to support the claim that the magazine was left on her cart by an officer or employee of Le Moyne. (McMartin Aff. ¶ 12).

It is clear that Le Moyne had reasonable programs in place to deal with plaintiff's complaints, and that its personnel took action on them as soon as they were made aware of their occurrences. *Quinn v. Green Tree Credit Corporation,* 159 F.3d 759, 766 (2d Cir.1998).

These situations compelled her to resign from her employment at Le Moyne.

■ Plaintiff is apparently alleging that her resignation was, in fact, a constructive discharge. In considering whether or not a constructive discharge has taken place, it must be determined that the working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir.1983). Courts have also required plaintiffs to show that the employer wanted the employee to resign and intentionally made the working conditions unpleasant

for the purpose of achieving that result. "The employer must have deliberately made an employee's working conditions so intolerable as to force the resignation." *Martin v. Citibank,* 762 F.2d 212, 221 (2d Cir.1985). The law of constructive discharge in the Second Circuit is clearly unfavorable to the plaintiff. *Greenberg v. Hilton International Company,* 870 F.2d 926, 936 (2d Cir.1989). It is insufficient that the employee's working conditions are merely difficult or unpleasant. *Stetson v. NYNEX Service Company,* 995 F.2d 355, 361 (2d Cir.1993), and a constructive discharge cannot be established simply through evidence that an employee was dissatisfied with an unfavorable job assignment. *Muller v. United States Steel Corporation,* 509 F.2d 923 (10th Cir.) *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975).

■ On the date plaintiff resigned her position on July 12, 2000, Le Moyne was engaged in the process of evaluating several contentions set forth in this action. In fact, a mediation conference with the EEOC on plaintiff's original discrimination claim was scheduled to take place on that date. The purposes of the meeting was to give the parties a chance to ascertain the reasons for any problems, Le Moyne's responses thereto and what it asked from plaintiff as an employee. The mediation concluded when plaintiff submitted her resignation and refused to take part in the meeting.

The record in this case does not display evidence adequate enough to support that Le Moyne deliberately compelled plaintiff to resign or establish a *prima facie* case that her work environment was intolerable and that Le Moyne was engaged in intentional efforts to compel her resignation.

In her second cause of action, plaintiff alleges that her union did not represent

her properly in her disputes with Le Moyne.

Initially, the Union maintains that plaintiff's allegations against it are not properly before the court because she did not exhaust her administrative remedies.

■ As a general rule, a party seeking to assert a Title VII claim against a particular defendant in federal court must first have named that party as a respondent in the charge filed with the EEOC or authorized state agency. 42 U.S.C.A.2000e–5(f)(1)(a); *Johnson v. Palma,* 931 F.2d 203, 209 (2d Cir.1991). This requirement serves the two-fold purpose of providing notice of the alleged violation to the charged party and insuring that all relevant parties are brought before the administrative agency, so that the agency can attempt to negotiate voluntary compliance with the law through conciliation proceedings. *Gilmore v. Local 295,* 798 F.Supp. 1030, 1037–38 (S.D.N.Y.1992), aff'd, 23 F.3d 396 (2d Cir.) *cert. denied,* 513 U.S. 936, 115 S.Ct. 335, 130 L.Ed.2d 293 (1994). However, because Title VII plaintiffs are often *pro se* and are not "vested in the vagaries of Title VI and its jurisdictional and pleading requirements," courts have taken a flexible position in interpreting Title VII's procedural provisions. *Johnson v. Palma,* 931 F.2d at 209.

■ With this consideration in mind, courts have created two exceptions to the general rule that a party must be named in an EEOC charge in order for a court to have jurisdiction over it. The first exception is based on "identity of interest." Under this exception, the plaintiff may sue a defendant who was not named in the charge. *Id.* In order to determine whether a "clear identity" of interest exists between the named and unnamed parties, the courts look at four factors:

1) whether the role of the unnamed party could through reasonable effort be ascertained at the time of the filing of the EEOC charge;

2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for purposes for obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Id.* at 209–10.

■ None of the four factors are present in this case. Plaintiff knew of the existence of the Union and any role it might have played at the time she filed her charge with the EEOC. Second, the Union's interest and that of the employer are not sufficiently similar for the purpose of obtaining conciliation and compliance. Third, the Union's absence from the EEOC proceedings resulted in actual prejudice to it since the EEOC investigation might have found that the Union played no part in any of the discriminatory act alleged by plaintiff. Finally, there is no allegation that the Union represented to the plaintiff that its relationship with her was through the employer.

An exception has also been created for cases in which, from the facts in the EEOC charge, the agency could have inferred that the named defendant and unnamed defendant were part of a common discriminatory scheme. *Glus v. G.C. Murphy Company,* 562 F.2d 880, 888 (3d Cir. 1977), *cert. denied,* 449 U.S. 949, 101 S.Ct. 351, 66 L.Ed.2d 212 (1980). (Plaintiff can maintain a Title VII claim without having defendants named in the EEOC charge, if

the EEOC could infer from the facts alleged in the body of the complaint that named and unnamed parties were acting in a common discriminatory scheme). That exception is inapposite in the instant case because plaintiff's EEOC charge does not even mention the Union.

Since plaintiff's failure to name the Union as a defendant in her EEOC charge does not fall under either of the two judicially created exceptions, this court does not have jurisdiction over her Title VII claim against the Union.

Accordingly, the summary judgment motions brought by defendants Le Moyne and the Union are **GRANTED**, and the complaint is **DISMISSED**.

**IT IS SO ORDERED.**